97, for which sum, with interest from that date, the defendants are indebted to the plaintiffs. It is also conceded that the collaterals which were in the hands of the plaintiffs were pledged as collateral to certain obligations upon which the defendant Baxter was liable. as the maker or indorser of certain promissory notes to the estate of John H. Inman. The judgment will direct that the collaterals remaining in the hands of the plaintiffs be sold, and if, after paying their claim, any surplus remains, it must be applied in satisfaction of the amount due to the estate of John H. Inman. Draw decision and judgment accordingly, and settle on three days' notice.

Judgment accordingly.

---

(66 App. Div. 559.)

### CORNELL v. TRAVELLERS' INS. CO.

(Supreme Court, Appellate Division, First Department. December 6, 1901.)

EMPLOYER'S INDEMNITY INSURANCE—LIABILITIES—ATTORNEY'S FEES.

Defendant insured plaintiff against loss from liability to his employés for personal injuries and from liability to persons other than employés who might sustain bodily injuries caused by the business operations of insured. The policy described plaintiff's business as manufacturing and erecting structural ironwork for buildings. The policy also insured plaintiff's liability on shop work and general liability on outside work. The policy provided that the company might pay the full amount for which it would be held liable in respect to claims for personal injuries, failing which it "shall defend said proceedings in behalf of the insured, and shall have control of such defense." Plaintiff was sued by several persons for injuries received in the erection of a building. Defendant refused to defend such suit, and plaintiff did so successfully. *Held*, that defendant was liable to plaintiff for his expenses in connection therewith.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by John M. Cornell against the Travellers' Insurance Company on an insurance policy. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Lemuel Skidmore, for appellant.

Ira D. Warren, for respondent.

McLAUGHLIN, J. On the 18th of July, 1895, the defendant issued to the plaintiff a policy of insurance, which, among other things, provided that the defendant, "in consideration of the application for this policy, a copy of which is hereto attached and made a part of this contract," and of $5,000, does hereby insure "the plaintiff against loss from liability to employés of the insured who may during the term of twelve months from noon of July 3, 1895, accidently sustain bodily injuries while actually employed in the performance of duty in the trade or occupation for which they have been employed by the insured under circumstances which shall impose upon the insured a common-law or statutory liability to such employés by reason

thereof. * * * This insurance also covers the liability of the insured to persons other than employés who may, during the same term, sustain bodily injuries directly caused by the business operations of the insured, as described in the application for this policy, under circumstances which shall impose upon the insured a common-law or statutory liability to such persons therefor." The application referred to described the plaintiff's business as manufacturing and erecting structural ironwork for building, and stated that the policy to be issued in pursuance of it was to cover plaintiff's "liability on shop work and general liability on outside work, including seams." During the life of the policy a building in the city of New York, in process of construction, the structural ironwork of which had been partially, but not entirely, completed by the plaintiff, collapsed, and a number of workmen engaged thereon, not employés of the plaintiff, were either killed or injured. Following the accident, several of the persons injured and the legal representatives of those killed commenced actions in the supreme court of this state against the plaintiff, one Parker, the general contractor, and Ireland, the owner of the building, to recover damages for the deaths occasioned or the personal injuries sustained, upon the ground that the same were caused by the negligence of the defendants named in such actions. In all, 11 actions were commenced. Immediately following the accident, the plaintiff in this action notified the defendant of what had occurred, and thereafter, as the actions were commenced, gave it notice of that fact, at the same time transmitting to it a copy of the summons and complaint in each action, coupled with a request that it assume and take charge of the defense. In each instance the copy of the summons and complaint was returned, and the request refused. The plaintiff thereafter took charge of the defense on its own account. Two of the actions were tried, and verdicts rendered in favor of this plaintiff, and thereafter the other actions were discontinued, so far as the same related to him. The defense of the actions thus begun, so far as the same related to this plaintiff, involved on his part the expenditure of a considerable sum of money, and this action was brought to recover that sum from the defendant, upon the ground that under the terms of the policy referred to it was liable for the same. At the conclusion of the plaintiff's case, on motion of defendant's counsel, the complaint was dismissed, substantially upon the ground that the plaintiff had failed to establish that the death of any of the persons killed was caused by, or the injuries to the other persons bringing actions were "directly the result of, the business operations" of the plaintiff; and that the defendant had not given its written consent that the plaintiff incur any expense in the defense of such actions. Judgment was entered to this effect, from which the plaintiff has appealed.

We are of the opinion that the court erred in dismissing the complaint. It was stipulated upon the trial that the defendant refused to take charge of the defense in any of the actions, and, having refused, the plaintiff was justified, under the terms of the policy, in assuming the defense, and looking to the defendant for whatever expense he incurred in connection therewith. Nor do we think there

is any force in the other ground urged, viz. that the plaintiff failed to show that the deaths were caused or the injuries sustained by the plaintiffs in the respective actions were "the direct result of the business operations of the plaintiff." It is true that it appeared upon the trial that the collapse of the building was not caused by any neglect or fault on the part of the plaintiff in this action, but was due solely to an insecure foundation of the building, with which the plaintiff had nothing to do; but the fact that the work which the plaintiff did was in no way connected with the foundation of the building did not relieve the defendant from its liability under its policy of insurance to defend actions brought against him upon the alleged ground that he was responsible in whole or in part for the collapse of the building. The deaths were caused and the injuries sustained in whole or in part by the fall of the iron structure which the plaintiff had erected, and when claims were made that his work was the cause of the collapse, or contributed to it, he was entitled to the protection provided by the policy. The contract was not one simply to indemnify him against damage,—that is, legal claims, which, from the very nature of things, could only be determined after a trial had,—but was to indemnify him against all claims, whether legal or not, provided the same came fairly within the provisions of the policy. This is evident from a portion of the policy, which provides that the defendant, "this company, shall have sole right, and it shall be its duty, to negotiate settlements and adjustments of all claims made against the insured and covered by this policy. If legal proceedings be commenced to enforce such claim or claims against the insured, this company may pay the insured the full amount for which it can be held liable in respect of such claim or claims, failing which it shall defend said proceedings on behalf of the insured, and shall have control of such defense." The policy, of course, must be liberally construed, and, if there be any doubt about its construction, or if it be susceptible to two interpretations, then it should be most strongly construed against the insurer, because it prepared the contract, and is responsible for the words used in it. Janneck v. Insurance Co., 162 N. Y. 574, 57 N. E. 182; Trenton Potteries Co. v. Title Guarantee & Trust Co., 50 App. Div. 490, 64 N. Y. Supp. 116. Claims of the nature referred to in the policy were made against the insured, based upon the ground that he was liable for the deaths occasioned and the injuries sustained, to enforce which the respective actions were brought. The very purpose of the policy was to indemnify the plaintiff against any expense which he might sustain by reason of such claims being made, and therefore, by the express provisions of the policy, it was the duty of the defendant to have assumed and taken charge of such defense. It having failed and neglected to do so, the only thing which the plaintiff could do was to assume and take charge of the defense himself, and look to the defendant for any expense he might incur by reason thereof, and for which it must be held liable. Hoven v. Assurance Corp., 93 Wis. 201, 67 N. W. 46, 32 L. R. A. 388; Anoka Lumber Co. v. Fidelity & Casualty Co., 63 Minn. 286, 65 N. W. 353, 30 L. R. A. 689.

The judgment, therefore, must be reversed, and a new trial or-

dered, with costs to the appellant to abide the event. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I think this judgment should be affirmed. The complaint alleges that none of the persons killed or injured and who brought actions against the plaintiff were employés of the plaintiff, but were all employés of the contractor or subcontractor engaged in constructing the building; that the accident was caused by some weakness in the structure of the building, part of which, to wit, the ironwork, had been erected by the plaintiff; and it was alleged and claimed by the said persons injured and by the legal representatives of the persons killed thereby that the said ironwork was negligently manufactured and erected by the plaintiff or his servants, and that such negligence. was the cause, or one of the causes, of the accident. But there is no allegation that the injuries to recover for which the actions were brought were "occasioned by the business operations" of the plaintiff, and the plaintiff's superintendent testified that none of the injuries to the persons who brought suit against the plaintiff were directly occasioned by the business operations of the plaintiff. The policy of insurance, which was made a part of the complaint, provides that the defendant does hereby insure J. B. & J. M. Cornell, of New York, or their successors, "against loss from liability to employés of the insured who may during a term of twelve months from noon of July 3, 1895, accidentally sustain bodily injuries while actually occupied in the performance of duty in the trade or occupation for which they have been employed by the insured, under circumstances which shall impose upon the insured a common-law or statutory liability to such employés by reason thereof: provided always: * * *. (2) This insurance also covers the liability of the insured to persons other than employés who may, during the same term, accidentally sustain bodily injuries directly occasioned by the business operations of the insured as described in the application for this policy, under circumstances which shall impose upon the insured a common-law or statutory liability to such persons therefor. * * * (6) * * * This company shall have sole right, and it shall be its duty, to negotiate settlements and adjustments of all claims made against the insured and covered by this policy. If legal proceedings be commenced to enforce such claim or claims against the insured, this company may pay the insured the full amount for which it can be held liable in respect of such claim or claims, failing which it shall defend said proceedings on behalf of the insured, and shall have control of such defense."

The question is as to the obligation assumed by the defendant to defend actions brought against this plaintiff, where the plaintiffs in such actions claim that the insured is liable for bodily injuries occasioned by the business operations of the insured, when in fact no such liability existed, and when such persons did not as a fact sustain bodily injuries occasioned by the business operations of the insured. To entitle the plaintiff to recover for the expenses incurred by him in the defense of this action, he must bring the case

within the obligations assumed by the defendant. The defendant assumed no obligation as to any liability of the plaintiff, except to such persons as should thus "accidentally sustain bodily injuries directly occasioned by the business operations of the insured"; and where the plaintiff seeks to impose upon the defendant an obligation to pay any liability that had been incurred by him he must allege and prove that such liability had been imposed in consequence of accidental bodily injuries directly occasioned by the business operations of the plaintiff. It is only to liabilities of this character that the policy attached, and for which the defendant was liable. It would seem to follow, therefore, that the claims of the persons injured by the collapse of the building were not liabilities of the plaintiff, within the terms of the policy. The obligation of the defendant to defend claims against the plaintiff was limited to claims against the insured, and covered by the policy. The claims covered by the policy were claims of persons who had sustained bodily injuries occasioned by the business operations of the plaintiffs; and the policy provides that, if legal proceedings be commenced to enforce such claim or claims against the insured, "this company may pay the insured the full amount for which it can be held liable in respect of such claim or claims, failing which, it shall defend said proceedings on behalf of the insured, and shall have control of such defense." Undoubtedly, the insured, if claims were made against him, which, if sustained, would make this defendant liable, could have given notice to the defendant to defend such claims, and, if it had failed to defend, he could then have made the defendant responsible for any amount recovered, together with the expenses of the defendant in defending the claim. But when, as in this case, the defendant denied liability, insisting that the claims were not within the terms of the policy, and the plaintiff succeeded in establishing the fact that they were not liabilities against the insured, it would seem to follow that for such claims there was no obligation on behalf of the defendant to defend the actions. The defendant did not assume to defend all actions against the plaintiff. It only assumed to defend claims made against him which were covered by the policy; and the further provision of the policy that the company should not be liable for any expenses incurred by the insured without its consent in writing would seem to have been intended to limit the right of the plaintiff to incur any expense in defending these suits for which the defendant should be liable. The liability assumed by the defendant is specific, and limited by the terms of the policy; and I fail to see any obligation assumed by this defendant which imposes upon it a liability for expenses incurred by the plaintiff without the consent of the company in defending actions against the defendant, when the actions were commenced by persons who had not sustained injuries occasioned by the business operations of the insured.

I think, therefore, that the judgment appealed from should be affirmed, with costs.