looked some material feature in the case; or proceeded upon an erro-
neous principle, or been influenced by prejudice or passion. We ex-
pressed a similar view in Re Staten Island Midland R. Co., 22 App.
Div. 366, 48 N. Y. Supp. 274. The rule applies with added force to
the present action. No one can read the evidence without seeing the
difficulty of locating the butternut tree, and the fences, walls, and
monuments, named in the descriptions of the conveyances, or with-
out coming to the conclusion that the case was pre-eminently a
proper one for a personal examination of the locality and monuments
by the trial justice. Under these circumstances, and bearing in
mind the difficulty of locating the property by the descriptions in
the deeds to the respective parties, we see no reason to disturb the
judgment. None of the appellants' exceptions to the admission or
exclusion of evidence is tenable.

A careful examination of the record on the appeal from the order
denying the motion for a new trial, on the ground of newly-discovered
evidence, has only added to our conviction of the wisdom of the trial
justice in personally examining the location. The motion was based
on the printed record on the appeal from the judgment, which shows
the fact of such personal examination. This fact necessarily in-
fluences our judgment as to the propriety of the denial of the motion.

Judgment affirmed, with costs. All concur; HIRSCHBERG, J., in result.

---

(61 App. Div. 202.)

LEGARE v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. May 17, 1901.)

STREET RAILROADS—LIABILITY FOR INJURY TO PASSENGER CROSSING STREET.
  Plaintiff's intestate, while attempting to cross a street, was injured by
  defendant's street car. Deceased, before crossing, saw the car approach-
  ing, about 75 feet away, and when it was about 15 feet from deceased,
  who was then in the middle of the track, the motorman increased the
  speed of the car. There was evidence that, if the motorman had checked
  the car when deceased started to cross the track, he would have crossed
  in safety. Held, that a verdict for plaintiff would not be disturbed, the
  question of negligence being for the jury.

Appeal from trial term.

Action by John Legare, as administrator of the estate of David E.
Legare, deceased, against the Union Railway Company of New York
City. From a judgment in favor of the plaintiff, the defendant ap-
peals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
INGRAHAM, and McLAUGHLIN, JJ.

Charles F. Brown, for appellant.
M. P. O'Connor, for respondent.

INGRAHAM, J. There can be little doubt, I think, that, if the
evidence of the deceased's brother is credible, the verdict of this jury
was right, and should be affirmed. This witness, with the deceased,
started to cross the street through which the defendant operates its

railroad. He testified that as he started to cross he looked up and down the street, and saw coming from the east the car that run over the deceased; that when he saw the car it was about 200 feet distant; that by the time he got to the middle of the street the car had come within 75 feet, and then the two boys started to cross the track; that as they started the motorman slowed up the car, but while they were on the track the motorman turned on the current, and then the car came towards them with accelerated speed; and that when the motorman put on the current the car was about 15 feet from the boys, the deceased was in the center of the track, and the witness a step or two behind him. Through quite a severe cross-examination, his testimony remained unshaken.

There is no question that if this motorman had been attending to his business he could have seen these boys crossing the track. He testified that he did see the deceased start to cross the track, and people some distance away saw the accident distinctly. It certainly was not negligence for the boys to start to cross the track when the car was 75 feet away, and it was gross and criminal negligence for the motorman, when within 15 feet of the boys, to put on power additional, and so increase the speed of the car as to run them down. Whether or not the plaintiff's intestate could have got across the track if the power had not been put on was a question for the jury, and there was certainly evidence from which the jury could find that if the motorman had attempted to stop the car when it was within 15 feet of the boys they could have crossed the track in safety. The testimony of the deceased's brother was corroborated by a boy named Morrell, who testified that he saw these two boys crossing the track, one slightly ahead of the other, and that the car was about 15 feet from the boys when the motorman put on more speed; that the one brother jumped back, and escaped, while the other went forward, and was struck; and that the car went about three car lengths before it was stopped. The motorman was called as a witness, and testified that he first saw the plaintiff's intestate when he was about five or six feet from the track; that the boy started to run across the track in front of the car, and as he came on the track the car struck him. The witness denied increasing the speed of the car, but testified that he tried to stop the car when he saw the boy starting to run across the track. The place of the accident was not a crossing, but the motorman knew that people were in the habit of crossing at that particular place. The defendant also called the conductor of the car, who testified that at the time the motorman had been drinking, and was under the influence of liquor. The evidence of this witness is of little value, as he admitted that he demanded money of the railroad company, and that the railroad company had refused to pay him, and that when called as a witness for the railroad company he testified to the drunkenness of the motorman without ever having communicated that fact to the railroad company. A witness called by defendant, who was a passenger on the car, testified that after the car passed the elevated structure the power was turned on; and, while the evidence of the motorman was corroborated, the question of the defendant's negligence was properly submitted to the jury.

Whether or not a person crossing a street in the city of New York, occupied, as most of them are, by cars propelled by electricity or cable, and often running at a high rate of speed, is guilty of contributory negligence, where there is evidence which would justify a finding that the defendant was negligent, must usually be for the jury; for, in a case where a car can be controlled so as to avoid running down a person crossing the track, it cannot be said that it was negligence as a matter of law for the person to attempt to cross the track. In many of the streets, during the busy portion of the day, these cars are running constantly, within a few feet of each other, and if a person about to cross the track is to wait until no car is in sight the track would be impassable, except at the risk of the pedestrian's being guilty of contributory negligence. The right of a railroad company to use the public streets is conditioned upon the right of the public to also use them in the ordinary way, and no railroad company has the right to so block the streets that the public are excluded from crossing them, except at the risk of being run over. It cannot, therefore, be contributory negligence as a matter of law for a person to start to cross a track when the car is at such a distance that the motorman can prevent its running down a person crossing the track, if attending to his business, and operating the car in a careful and prudent manner.

Assuming that plaintiff's testimony gave a correct account of the occurrence, these boys, when they started to cross the track, saw this car approaching at a distance of 75 feet. The boys had a right to suppose, seeing this car 75 feet away, and crossing the track in plain view of the motorman, that he would hold the car in control so as not to run them down. They certainly had a right to assume that he would not put on power to increase the speed of the car, and there was evidence that would justify a finding that, if the motorman had checked the car when the boys started to cross, the intestate could have crossed in safety. On the whole case, the question of negligence and contributory negligence was for the jury.

As these seem to be the only questions presented by the defendant, the judgment and order appealed from should be affirmed, with costs. All concur.